UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Douglas Munoz,

        Plaintiff,

v.                                                   Civ. No. 04-4142 (JNE/SRN)
                                                 ORDER

Pipestone Financial, LLC, and
Messerli & Kramer, P.A.,

        Defendants.

---

Wood R. Foster, Jr., Esq. and Mark Thieroff, Esq., Siegel Brill Greupner Duffy & Foster, appeared for Plaintiff Douglas Munoz.

Christopher R. Morris, Esq., Bassford Remele, P.A., appeared for Defendants Pipestone Financial, LLC, and Messerli & Kramer, P.A.

---

Munoz brought this action against Defendants Pipestone Financial, LLC (Pipestone), and Messerli & Kramer, P.A. (Messerli), (collectively Defendants), asserting claims under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692-1692o (2000). The case is before the Court on Munoz's motion for class certification and Defendants' motion for summary judgment. For the reasons set forth below, the Court denies both motions.

### I.    BACKGROUND

In 1995, Munoz opened a credit card account with First USA Bank, N.A., now known as Bank One, Delaware, N.A. (Bank One). The Cardmember Agreement governing the account established an interest rate of 11.99 percent per year[1] on outstanding purchase balances. The Cardmember Agreement also provided for the payment by Munoz of reasonable attorneys' fees in the event that Bank One referred the account in default to an attorney who is not a "regularly

---

[1]    This rate applied after an "introductory period."

1

salaried employee" of Bank One.  Moreover, the Cardmember Agreement provided:  "[Bank One] may at any time assign [the] Account, any sums due on [the] Account, this Agreement or [Bank One's] rights or obligations under this Agreement.  The person(s) to whom [Bank One] makes any such assignment shall be entitled to all of [Bank One's] rights under this Agreement, to the extent assigned."

Munoz used the account for approximately seven years.  He ultimately defaulted and the account was closed in September 2002.  In the summer of 2003, rights in and to a portfolio of debt, including Munoz's debt with Bank One, were assigned to Unifund CCR Partners (Unifund) (Bank One-Unifund Assignment).  As evidence of the sale of Munoz's account, Defendants have produced two bills of sale from the summer of 2003.  The first bill of sale, dated June 19, 2003, memorializes the assignment of 61,272 credit card accounts pursuant to the terms and conditions of a "Credit Card Account Purchase Agreement" dated June 19, 2003.  The second bill of sale, dated August 19, 2003, memorializes the assignment of 17,437 credit card accounts pursuant to the terms and conditions of a "Credit Card Account Flow Purchase Agreement" dated July 23, 2003.  Both bills of sale provide for the assignment of "all rights, title and interest of Seller in and to those certain receivables, judgments or evidences of debt described in Exhibit 1" to Unifund.[2]

Unifund, in turn, sold "all of its good and marketable title . . . in and to" certain accounts, including Munoz's account, to Pipestone on December 29, 2003 (Unifund-Pipestone Assignment).  Pipestone, a purchaser of defaulted debt portfolios, then retained Messerli to collect Munoz's debt. Messerli sent a demand letter in the amount of $8,660.26 to Munoz on January 5, 2004.  On April 7, 2004, Messerli filed suit on behalf of Pipestone in Minnesota

---

[2]   No "Exhibit 1," either from the June 19, 2003, agreement or the July 23, 2003, agreement, is part of the record.

District Court for the First Judicial District. In the state complaint, Pipestone sought the principal sum; attorneys' fees in the amount of $2,105.35, which represented 28% of the principal; and accrued interest totaling $1,341.20.[3]

Munoz filed this action on September 17, 2004. Munoz's three-count complaint alleges that Defendants violated the FDCPA by (1) attempting to collect an impermissible amount of interest, (2) misrepresenting the attorneys' fees that may lawfully be received, and (3) sending a letter in an envelope through which personal and confidential information was visible.

On September 12, 2005, the Court denied Defendants' initial motion for summary judgment, explaining that the term "receiveables," as used in the Bank One-Unifund Assignment bills of sale, refers to an amount owed and does not include interest not yet accrued or future attorneys' fees. Accordingly, the Court reasoned that Defendants failed to demonstrate, as a matter of law, that Unifund (or subsequently Pipestone) received the rights to collect interest and attorneys' fees.

At the time of the ruling on the initial motion for summary judgment, the only evidence in the record to reflect the Bank One-Unifund Assignment were the two bills of sale between Bank One and Unifund. On December 14, 2005, however, Defendants produced an affidavit from Unifund's director of acquisitions, Henry Thoman, in connection with Munoz's motion for class certification. Appended as an exhibit to Thoman's affidavit is a document he declares to be the purchase agreement underlying the Bank One-Unifund Assignment. This Bank One-Unifund Credit Card Flow Purchase Agreement (Bank One-Unifund Purchase Agreement) is dated July 25, 2003, and provides for the assignment of "all of Seller's rights, title and interest in and to the Charged-off Accounts identified in the file delivered by Seller to [Unifund] on the applicable

---

[3]  Munoz has since stipulated to entry of judgment in the state action for the full principal amount of $7,519.13.

Cut-Off Date." No such file of Charged-off Accounts has been made part of the record, but Thoman attests that Munoz's account was sold from Bank One to Unifund via the Bank One-Unifund Purchase Agreement.

## II. DISCUSSION

Munoz seeks certification of a class consisting of every consumer whose consumer-credit account was acquired by Pipestone, Messerli, or any third party pursuant to a sale of "receivables," "accounts," or "account receivables," and from whom Defendants have since September 17, 2003, collected or attempted to collect interest or attorneys' fees based on the terms of the contract between the consumer and the credit issuer. Munoz is not seeking class certification of his claims relating to Defendants' use of the window envelopes in the third count of his complaint.

Defendants contend that Munoz's claims relating to Defendants' collection of interest or attorneys' fees fail as a matter of law based on evidence produced after the Court's ruling on the initial motion for summary judgment. Defendants therefore seek summary judgment on these claims, thus rendering the motion to certify a class moot. Defendants are not seeking summary judgment on Munoz's claims regarding Defendants' use of the window envelopes. The Court turns first to Defendants' motion.

### A. Defendants' motion for summary judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes

4

demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the nonmoving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

In response to Defendants' initial motion for summary judgment, the Court concluded that the term "receiveables," as used in the Bank One-Unifund Assignment bills of sale, refers to an amount owed and does not include interest not yet accrued or future attorneys' fees. Defendants thus failed to demonstrate, as a matter of law, that the Bank One-Unifund Assignment conveyed the rights to collect interest and attorneys' fees.

Based on the production of Thoman's affidavit and the Bank One-Unifund Purchase Agreement, however, Defendants now argue that the Bank One-Unifund Assignment conveyed not only the amount of debt owed under Munoz's account, but all of Bank One's rights in the account to Unifund. In support of this position, Defendants cite the language of the Bank One-Unifund Purchase Agreement, which states that Seller will sell, assign, and transfer "all of Seller's rights, title and interest in and to the Charged-off Accounts identified in the file delivered by Seller to [Unifund] on the applicable Cut-Off Date." According to Defendants, the assignment of these "Charged-off Accounts" conveyed more than an amount owed; the assignment included the rights to collect interest and attorneys' fees.

Munoz counters that there is a genuine issue of material fact as to whether the Bank One-Unifund Purchase Agreement is in fact the contract that governed Unifund's acquisition of

5

Munoz's debt. Supporting Munoz's position is the fact that Defendants have not identified which of the two bills of sale memorializes Unifund's acquisition of Munoz's Account. Additionally, although each bill of sale refers to an exhibit describing "those certain receivables, judgments or evidences of debt" to be assigned to Unifund, no such exhibit has been produced. Furthermore, the June 19, 2003, bill of sale memorializes an assignment pursuant to the terms and conditions of a Credit Card Purchase Agreement dated June 19, 2003, which has not been produced. Similarly, the August 19, 2003, bill of sale memorializes an assignment pursuant to the terms and conditions of a Credit Card Account Flow Purchase Agreement dated July 23, 2003, which has not been produced. Finally, Munoz notes that Defendants have not produced the exhibit referenced in the July 25, 2003, Bank One-Unifund Purchase Agreement that should list the accounts covered by that contract.

Defendants respond that the second bill of sale contains a clerical error regarding the date of the purchase agreement that the bill of sale reflects. According to Defendants, the date was mistakenly recorded as July 23, 2003, but should have been July 25, 2003, the date of the Bank One-Unifund Purchase Agreement. Defendants rely on Thoman's affidavit to support the contention that Munoz's account was assigned pursuant to the Bank One-Unifund Purchase Agreement.

Viewing these discrepancies in the light most favorable to Munoz, the Court concludes that a reasonable fact finder could determine that Munoz's account was not assigned pursuant to the terms of the Bank One-Unifund Purchase Agreement. Although Munoz's claims relating to the collection of continued interest and attorneys' fees appear ripe for summary judgment in many respects, there remain a series of factual gaps that preclude such a resolution. *See Wallace v. DTG Operations, Inc.*, 442, F.3d 1112, 1118 (8th Cir. 2006) ("Where reasonable fact finders

could extend an inference in favor of the non-moving party without resorting to speculation, we may not declare the inference unjustifiable simply because we might draw a different inference."). Defendants have failed to demonstrate that Munoz's account was one of the accounts assigned under the Bank One-Unifund Purchase Agreement. Accordingly, the Court denies Defendants' motion for summary judgment.

**B.     Munoz's motion for class certification**

Rule 23 of the Federal Rules of Civil Procedure governs a district court's consideration of a motion for class certification. Rule 23 requires a plaintiff to demonstrate that: (1) the class is so numerous that joinder of all the members is impracticable; (2) questions of law or fact are common to the class; (3) the claims or defenses of the representative parties are typical of the class; and (4) the representative parties fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

In addition to the Rule 23(a) factors, a plaintiff must also demonstrate at least one of the following subsections of Rule 23(b): (1) that there is a risk of inconsistent verdicts if the class is not certified; (2) that injunctive or declaratory relief is appropriate; or (3) that a common question of law or fact predominates any questions affecting only individual members and that a class action would be superior to other available methods. Fed. R. Civ. P. 23(b).

The party seeking class certification bears the burden of establishing that it has satisfied each of Rule 23's class certification requirements. *See Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994). The Court ultimately retains broad discretion in determining whether to certify a class under Rule 23. *Id.* at 259.

Although Munoz's claims survived Defendants' initial motion for summary judgment on the basis that his debt was assigned from Bank One to Unifund as a "receiveable," Munoz seeks

7

to certify a class consisting of "every consumer whose consumer-credit account was acquired by Pipestone, Messerli, or any third party pursuant to a sale of 'receivables,' 'accounts,' or 'accounts receivable,' and from whom Messerli and/or Pipestone has since September 17, 2003, collected or attempted to collect interest and/or attorneys' fees based on the terms of the contract between the consumer and the credit issuer." This proposed class definition prompts an inquiry into whether Munoz's claims will be typical of the class, particularly with respect to those consumers whose credit accounts were assigned pursuant to a sale of "accounts" or "accounts receivable," rather than "receivables."

Typicality requires, not surprisingly, that the claims of the representative party be typical of the claims of the class. Fed. R. Civ. P. 23(a)(3). As such, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (citations omitted). The typicality requirement is generally considered to be satisfied "if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory." *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562 (8th Cir. 1982) (citation omitted).

Munoz asserts that typicality is met because he is a member of the described class and Defendants treated him exactly as they treated all other class members. Furthermore, Munoz asserts that the class claim stems from a single legal theory, namely that a debt buyer that acquires a "receivable," an "account receivable," or an "account" does not also acquire the original creditor's rights to attorneys' fees and continued interest. The Court has already indicated that the assignment of a "receivable" does not carry with it the original creditor's rights to collect interest and attorneys' fees, but Munoz's claim begs the question of whether

8

"accounts" or "accounts receivable" should be treated the same way.

Although a court may not decide the merits of a case at the class certification stage, *see Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177- 78 (1974), a motion for class certification "generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action," *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978) (citations and internal quotations omitted). "The preliminary inquiry at the class certification stage may require the court to resolve disputes going to the factual setting of the case, and such disputes may overlap the merits of the case." *Blades v. Monsanto Co.*, 400 F.3d 562, 566-67 (8th Cir. 2005) (citations omitted). "Nonetheless, such disputes may be resolved only insofar as resolution is necessary to determine the nature of the evidence that would be sufficient, if the plaintiff's general allegations were true, to make out a prima facie case for the class." *Id.* In this case it is necessary to the consider whether the assignment of "accounts" and "accounts receivable" also conveys the original creditor's rights to collect interest and attorneys' fees in order to determine whether Munoz's allegations make out a prima facie case for the proposed class based on a single legal theory.

The Seventh Circuit Court of Appeals recently addressed the issue of whether the buyer of credit card debt also acquires the original creditor's right to collect interest. In *Olvera v. Blitt & Gaines, P.C.*, 431 F.3d 285, 289 (7th Cir. 2005), the court found it unreasonable that a debtor's interest rate could be lowered simply because a credit card company elects to sell the debt to another company rather than collect the debt itself. The plaintiff in *Olvera* brought a claim under the FDCPA alleging, as Munoz does, that the assignee of a defaulted credit card account could not charge or collect interest in excess of a state imposed statutory cap on interest rates. *See id.* at 286-87. The assignor was exempt from the statutory cap on interest rates while

the assignee was not, and the plaintiff argued that an assignee is prohibited by law from charging the rate of interest specified in the original credit agreement if that assignee could not have contracted to receive the same rate of interest had it not been a party to the original agreement. The court held otherwise: "It was the assignors who persuaded the plaintiffs to pay high interest rates; the plaintiffs could hardly have supposed that the rates would plummet if they defaulted!" *Id.* at 289.

Similarly, courts addressing the question of whether the assignee of a credit card account received the original creditor's right to collect attorneys' fees have determined that the right is conveyed along with the account. This issue was recently addressed in *Kirscher v. Messerli & Kramer, P.A.*, Civ. No. 05-1901, 2006 WL 145162 (D. Minn. Jan. 18, 2006), which rejected the claim that the assignee of a defaulted credit card account was precluded from seeking attorneys' fees at the outset of litigation pursuant the FDCPA. In *Kirscher*, as here, Messerli included a demand for a set amount of attorneys' fees at the outset of its state court action. The cardmember agreements in each case expressly provide that the creditor can charge the cardmember for reasonable attorneys' fees and litigation costs incurred in collecting the debt. "Thus, the agreement creating the debt expressly authorized the collection of fees, in accordance with [the FDCPA]." *Id.* at *5; *see also Resler v. Messerli & Kramer, P.A.,* Civ. No. 02-2510, 2003 WL 193498, at *5 (D. Minn. Jan. 23, 2003) (holding that the collection of attorneys' fees does not violate the FDCPA when an express agreement between a debtor and a creditor expressly permits the collection).

From these holdings, the Court concludes that it is likely that those putative class members whose consumer-credit accounts were assigned as "accounts" will not be able to proceed based on the same legal theory as those whose consumer-credit accounts were assigned

as "receivables." Whether Munoz's account ultimately proves to have been assigned as a "receivable," an "account receivable," or an "account," Munoz's claims cannot remain typical of the remainder of the class members whose claims were not similarly assigned. Having failed to meet the typicality requirement of Rule 23(a)(3), the Court denies Munoz's motion to certify class.

## III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendants' Second Motion for Summary Judgment [Docket No. 53] is DENIED.

2. Munoz's Motion to Certify Class [Docket No. 34] is DENIED.

Dated: September 26, 2006

        s/ Joan N. Ericksen
        JOAN N. ERICKSEN
        United States District Judge