UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Douglas Munoz,

      Plaintiff,

v.                                                                  Civil No. 04-4142 (JNE/SRN)
                                                                    ORDER
Pipestone Financial, LLC, and
Messerli & Kramer, P.A.,

      Defendants.

---

Wood R. Foster, Jr., Esq., and Mark Thieroff, Esq., Siegel, Brill, Greupner, Duffy & Foster, P.A., appeared for Plaintiff Douglas Munoz.

Christopher R. Morris, Esq., appeared for Defendants Pipestone Financial, LLC, and Messerli & Kramer, P.A.

---

Douglas Munoz claims that Pipestone Financial, LLC, and Messerli & Kramer, P.A., (collectively, Defendants) violated the Fair Debt Collection Practices Act (FDCPA) by attempting to collect interest at an impermissible rate, misrepresenting their entitlement to attorney fees, and using envelopes that reveal personal and confidential information about him in communications with him. The case is before the Court on Munoz's and Defendants' motions for partial summary judgment. For the reasons set forth below, the Court grants in part and denies in part the motions.

## I.     BACKGROUND

In 1995, Munoz opened a credit-card account (Account) with First USA Bank, N.A.[1] After an introductory period, the Cardmember Agreement governing the Account set the finance charge at an annual percentage rate of 11.99%. The Cardmember Agreement also provided for

---

[1]     First USA Bank was later bought by and merged into other banks. The Court refers to First USA Bank and its successor banks as "First USA."

the payment by Munoz of reasonable attorney fees in the event that First USA referred the

Account after a default to an attorney who is not a "regularly salaried employee" of First USA.

The Cardmember Agreement also provided:  "[First USA] may at any time assign [the] Account,

any sums due on [the] Account, this Agreement or [First USA's] rights or obligations under this

Agreement.  The person(s) to whom [First USA] makes any such assignment shall be entitled to

all of [First USA's] rights under this Agreement, to the extent assigned."

        After using the Account for approximately seven years, Munoz defaulted.  The Account

was closed in September 2002 with a balance of $7,519.13.  Later, First USA assigned the

Account to Unifund CCR Partners.  In turn, Unifund CCR Partners assigned the Account to

Pipestone.  Pipestone is a purchaser of defaulted debt portfolios.

        Pipestone retained Messerli & Kramer to collect Munoz's debt.  Messerli & Kramer sent

a demand letter in the amount of $8,660.26 to Munoz on January 5, 2004.  This letter was sent in

an envelope with a transparent window.  On April 7, 2004, Messerli & Kramer filed suit on

behalf of Pipestone in the Minnesota District Court for the First Judicial District.  In the state-

court complaint, Pipestone sought a "total amount due and owing of $10,965.68."  This amount

comprised the Account's closing balance; attorney fees in the amount of $2,105.35; and accrued

interest totaling $1,341.20.  Munoz later stipulated to entry of judgment against him in the state-

court action for $7,519.13.

        During the pendency of the state-court action, Munoz brought this action under the

FDCPA.  The motions before the Court relate to Munoz's claims that are based on Defendants'

attempt to collect interest and attorney fees.

## II.   DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the party opposing the motion to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### A.   Interest rate

In Count I of his Complaint, Munoz claims that Defendants violated the FDCPA by attempting to collect interest at an impermissible rate. The FDCPA provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e (2000). A false representation of a debt's character, amount, or legal status violates section 1692e. *Id.* § 1692e(2). The FDCPA also states that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." *Id.* § 1692f. Violations of section 1692f include "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by

law." *Id.* § 1692f(1); *see Duffy v. Landberg*, 215 F.3d 871, 875 (8th Cir. 2000) (holding letters

seeking interest overstated by less than $2 violated section 1692f).  "A violation of the FDCPA is

reviewed utilizing the unsophisticated-consumer standard which is designed to protect

consumers of below average sophistication or intelligence without having the standard tied to the

very last rung on the sophistication ladder." *Strand v. Diversified Collection Serv., Inc.*, 380

F.3d 316, 317 (8th Cir. 2004) (quotations omitted).

According to Munoz, Minnesota law prohibits Defendants from collecting interest at a

rate that exceeds eight percent.  *See* Minn. Stat. § 334.01 (2006).  Defendants contend that they

properly attempted to collect interest at the rate specified in the Cardmember Agreement.

"The National Bank Act (NBA), 12 U.S.C. §§ 21–216d, authorizes a national bank 'to

charge interest at the rate allowed by the laws of the state in which the bank is located.'" *Phipps*

*v. FDIC*, 417 F.3d 1006, 1011 (8th Cir. 2005) (quoting *Krispin v. May Dep't Stores Co.*, 218

F.3d 919, 922 (8th Cir. 2000)).  In this case, it is undisputed that First USA, a national bank

chartered in Delaware, properly charged Munoz interest at an annual percentage rate of 11.99%.

*See* 12 U.S.C. § 85 (2000); 5 Del. C. §§ 943–945.  Through a series of assignments, Munoz's

Account was assigned from First USA to Pipestone.  Although Pipestone is not a national bank,

"[c]ourts must look at 'the originating entity (the bank), and not the ongoing assignee . . . in

determining whether the NBA applies.'" *Phipps*, 417 F.3d at 1013 (quoting *Krispin*, 218 F.3d at

924).  Thus, Defendants properly attempted to collect interest from Munoz at the rate specified in

the Cardmember Agreement.  As to Count I, the Court therefore grants Defendants' motion,

denies Munoz's motion, and dismisses the claim.[2]

---

[2]     Munoz asserts that Messerli & Kramer also violated the FDCPA by attempting to collect
interest from him on behalf of Northern Financial Systems (Northern).  Messerli & Kramer
contends that Munoz's allegations are outside the scope of the Complaint's allegations.  The

**B.**     **Attorney fees**

In Count II of his Complaint, Munoz alleges that Defendants violated the FDCPA by

misrepresenting their entitlement to attorney fees.  He maintains that Defendants violated the

FDCPA by claiming in the state-court complaint that attorney fees were due and owing before

the fees were actually incurred.[3]  In the state-court complaint, Pipestone alleged that Munoz

owed "$7,519.13 for goods and services sold and delivered to [him] through and including

March 26, 2004," and that Munoz "agreed to pay all reasonable costs of collecting including

reasonable attorneys' fees" in the Cardmember Agreement.  Pipestone's complaint contained the

following demand for judgment:

> [Pipestone] demands judgment against [Munoz] for the principal sum of
> $7,519.13, plus accrued interest in the amount of $1,341.20, plus reasonable
> attorneys' fees of $2,105.35, for a total amount due and owing of $10,965.68, plus
> continued interest on the outstanding principal balance at the account rate until the
> date of entry of judgment and [Pipestone's] costs and disbursements herein.

Messerli & Kramer represented Pipestone in the state-court action on a contingency-fee basis.

The amount of attorney fees sought reflects the contingency-fee agreement between Messerli &

Kramer and Pipestone.  Defendants contend that their request for attorney fees in the state-court

action did not violate the FDCPA.[4]

---

Court agrees.  In his Complaint, Munoz alleges that he "has been subject to illegal debt-collection practices on the part of the defendants" and that "[t]he practices arise out of Pipestone's acquisition of a debt originally owed to First USA Bank, N.A."  Thus, the Court declines to consider Munoz's allegations regarding Messerli & Kramer's efforts to collect interest on behalf of Northern.  *See Rodgers v. City of Des Moines*, 435 F.3d 904, 910 (8th Cir. 2006); *N. States Power Co. v. Fed. Transit Admin.*, 358 F.3d 1050, 1057 (8th Cir. 2004).

[3]     For the reasons set forth in the discussion of Count I, the Court declines to consider Munoz's arguments regarding Messerli & Kramer's attempts to collect attorney fees on behalf of Northern.

[4]     During this litigation, Defendants invoked the *Rooker-Feldman* doctrine to oppose Munoz's claims.  *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).  The doctrine "is confined to cases of the kind from which the

"Recovery of attorney fees must be based on either a statute or a contract." *Schwickert, Inc. v. Winnebago Seniors, Ltd.*, 680 N.W.2d 79, 87 (Minn. 2004); *see Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 363 (Minn. 1998).  In the Cardmember Agreement, Munoz agreed to pay reasonable attorney fees:

> As permitted by applicable law, you agree to pay all collection expenses actually incurred by us in the collection of amounts you owe under this Agreement (including court costs and the fees of any collection agency to which we refer your Account) and, in the event we refer your Account after your default to an attorney who is not our regularly salaried employee, you agree to pay the reasonable fees of such attorney.

In support of their motion, Defendants cite cases that hold that a debtor may not assert a claim under the FDCPA to contest the reasonableness of attorney fees demanded by a debt collector in a complaint. *See, e.g.*, *Bull v. Asset Acceptance, LLC*, 444 F. Supp. 2d 946, 949-51 (N.D. Ind. 2006).  In contrast to those cases, Munoz is not challenging the reasonableness of the fees sought by Defendants in the state-court action.  Instead, he claims that Defendants violated the FDCPA by asserting that attorney fees were due and owing when the state-court action began.

Defendants contend that they did not violate the FDCPA by quantifying the amount of attorney fees in the demand for judgment.  In support, they rely on *Winn v. Unifund CCR Partners*, Civ. No. 06-447, 2007 WL 974099 (D. Ariz. Feb. 13, 2007).  In that case, the defendants brought an action against the plaintiff in state court to collect a debt.  2007 WL 974099, at *4.  In the body of the state court-complaint, the defendants alleged that the plaintiff owed principal and interest in specified amounts and that the defendants were entitled to

---

doctrine acquired its name:  cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *see Lance v. Dennis*, 546 U.S. 459, 464 (2006) (per curiam) (emphasizing narrowness of *Rooker-Feldman* doctrine).  Here, Munoz does not complain of injuries caused by a state-court judgment rendered before he commenced this action.  Thus, the doctrine does not apply.

reasonable attorney fees. *Id.* The defendants did not specify the amount of attorney fees sought in the body of the complaint. *Id.* In the prayer for relief, however, the defendants specified the amount of attorney fees sought. *Id.* at *5. In contrast to the case at hand, the defendants in *Winn* did not allege that attorney fees were "due and owing" in the prayer for relief. *Id.* The district court, adopting a magistrate judge's Report and Recommendation, concluded that the defendants had not violated the FDCPA by quantifying the amount of attorney fees sought in the prayer for relief because the prayer for relief was simply "a request for a certain amount of attorney's fees":

> [The prayer for relief] is a request that the court find an amount not less than
> $2,486.42 to be reasonable. It is not an assertion that this specific amount is
> explicitly authorized by the credit agreement.

*Id.* at *3. The district court relied on the complaint's structure to reinforce its reasoning:

> This amount [of attorney fees] does not appear in the body of the complaint where
> [the plaintiff's] specific obligations under the credit card agreement are listed.
> Even the 'least sophisticated debtor' would understand that this amount . . . is not
> an explicit part of his agreement. Instead, it is what his creditor would like the
> court to conclude is reasonable. He might have to pay it; he might not. The
> prayer for relief is not false, deceptive, misleading or unfair. It does not violate
> the FDCPA.

*Id.* (citations omitted). The Court is not persuaded by Defendants' reliance on *Winn*. Unlike that case, Pipestone's demand for judgment asserted that a specific amount, including attorney fees, was due and owing. Thus, Pipestone's demand for judgment did not simply request that the state court find a certain amount of attorney fees reasonable. Instead, the demand for judgment represented that attorney fees in the amount of $2,105.35 were due and owing from Munoz when the state-court action began.

Defendants maintain that they had no choice but to allege the relief sought in the state-court complaint. However, they cite no rule that required them to represent in a complaint that attorney fees based on a contingency-fee agreement between a debt collector and its attorney were due and owing from a debtor. *Cf. Wells Fargo Home Mortgage, Inc. v. Newton*, 646

7

N.W.2d 888, 899 (Minn. Ct. App. 2002) (holding complaint's request that included demand for

attorney fees "as allowed by law in such an amount as the Court shall determine" satisfied Minn.

R. Civ. P. 8.01).

Defendants also assert that contingency-fee agreements are routine, *see* Minn. R. Prof.

Cond. 1.5(c), and that an attorney may request fees based on a contingent-fee agreement, *see*

*Taylor v. Luper, Sheriff & Niedenthal Co.*, 74 F. Supp. 2d 761 (S.D. Ohio 1999).  In *Taylor*, the

district court addressed a FDCPA claim similar to the one asserted by Munoz:

> When the defendant law firm asserted a claim for attorneys fees which
> was equal to its one-third contingent fee agreement with the bank, the claim, if
> successful, would have resulted in the bank's recovery of the fees it would
> actually have been obligated to pay to its attorneys.  Thus, defendants asserted a
> claim which was designed to make the bank whole.  Under Ohio law, an award of
> reasonable attorneys fees in favor of a successful party may be based upon the
> contingent fee agreed upon between the successful party and its attorney.

74 F. Supp. 2d at 767.  The *Taylor* court cited *Central Trust Co. v. Warburg*, 661 N.E.2d 275,

277 (Ohio Ct. App. 1995) ("We cannot say that the trial court abused its discretion when it

awarded attorney fees consistent with the contingent-fee agreement . . . ."), to support its view of

Ohio law, but failed to acknowledge a decision of the Ohio Supreme Court that undermines

*Warburg*, *see Landis v. Grange Mut. Ins. Co.*, 695 N.E.2d 1140, 1142-43 (Ohio 1998) ("That the

contingency fee agreement was normal and customary as to [plaintiff] and [his counsel] does not

mean that it can be enforced against a party that did not agree to it.").

More than 100 years ago, the Minnesota Supreme Court noted that many courts had held

stipulations in instruments for the payment of money for attorney fees or costs of collection in

excess of taxable costs absolutely void.  *Campbell v. Worman*, 60 N.W. 668, 668-69 (Minn.

1894).  The court, however, held them "valid as agreements to indemnify the payees for such

liabilities as they may be necessarily and reasonably compelled to incur for attorneys' fees in

case they are compelled, on default of the makers, to collect by suit." *Id.* at 669.  The court

continued:

> But we have held that the stipulated attorneys' fees are no part of the original
> debt; that the right to them does not accrue until the payee incurs the liability, and
> then only to the extent of the reasonable value of the attorneys' services actually
> performed or to be performed, which must be proved.  It is only upon this theory
> that such stipulations can be sustained at all, for, if they are not mere agreements
> to indemnify for expenses actually or reasonably made, they would be merely
> penal and hence void.  The full amount for which the maker is liable on such
> stipulations is not really due when suit is brought, for the services of the attorney
> are not then fully performed.  Hence we hold that a recovery on such stipulations
> can only be had upon application to the court, and upon proof of the
> reasonableness and value of the attorneys' fees; and thereupon the court may fix
> the amount to be allowed at such sum, not exceeding the amount stipulated, as it
> shall deem reasonable and just, and the amount so fixed may be included in the
> judgment, the same as any other disbursement in the action.

*Id.* (citations omitted).

Defendants argue that *Campbell* need not be credited due to its antiquity.  They say it is

"simply outdated."  In 2000, however, the United State Court of Appeals for the Eighth Circuit

characterized *Campbell* as "relevant Minnesota law."  *Kojetin v. C U Recovery, Inc.*, 212 F.3d

1318, 1318 (8th Cir. 2000) (per curiam).  In *Kojetin*, a credit union referred a note to the

defendant after the note, signed by the plaintiff, went into default.  *Id.*  Under the note, the

plaintiff agreed "to pay reasonable attorney's fees and costs incident to collection of due and

unpaid installments or of any balance unpaid after maturity."  *Kojetin v. C U Recovery, Inc.*, Civ.

No. 97-2273, 1999 WL 1847329, at *1 n.1 (D. Minn. Mar. 29, 1999), *aff'd*, 212 F.3d 1318 (8th

Cir. 2000).  The plaintiff brought suit under the FDCPA after the defendant added a collection

fee based on a percentage of the principal balance instead of actual collection costs.  *Kojetin*, 212

F.3d at 1318.  The Eighth Circuit concluded that the defendant had violated the FDCPA by

charging a collection fee based on a percentage of the principal balance that remained due rather

than the actual cost of collection.  *Id.*

In this case, Pipestone, represented by Messerli & Kramer, alleged that attorney fees were due and owing at the outset of the state-court action. Defendants' contingency-fee agreement determined the amount of attorney fees sought. Munoz was not a party to that agreement, and he did not agree in the Cardmember Agreement to subject himself to whatever contingency fee a debt collector agreed to pay its attorney. Instead, he agreed to pay "all collection expenses actually incurred" and "reasonable fees" of an outside attorney. Having agreed to pay Messerli & Kramer a percentage of the amount collected, Pipestone had not incurred the attorney fees sought in the state-court action when Pipestone alleged that the fees were due and owing from Munoz. *See Stall v. First Nat'l Bank of Buhl*, 375 N.W.2d 841, 845 (Minn. Ct. App. 1985) ("Because no amounts have yet been realized on the Roberts file, Stall is not entitled to a contingent fee at this time. He will be entitled to his contingent fee if and when the bank realizes an amount on this matter."). Therefore, the Court denies Defendants' motion, grants Munoz's motion, and concludes that Defendants are liable under Count II. *See Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 404 (3d Cir. 2000).

### III.  CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT

IS ORDERED THAT:

1.  Defendants' motion for partial summary judgment [Docket No. 69] is GRANTED IN PART and DENIED IN PART.

2.  Munoz's motion for partial summary judgment [Docket No. 75] is GRANTED IN PART and DENIED IN PART.

3.  Count I of the Complaint [Docket No. 1] is DISMISSED WITH PREJUDICE.

4.  Defendants are liable to Munoz under Count II of the Complaint.

Dated:  August 30, 2007

s/  Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge